UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CURWOOD L. PRICE,

        Plaintiff,                          Case No. 1:12-cv-1185

v.                                                Honorable Robert J. Jonker

BONITA HOFFNER et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. §§ 1983 and 1985. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Curwood L. Price presently is incarcerated with the Michigan Department of Corrections at the Lakeland Correctional Facility (LCF). He sues the following LCF employees: Warden Bonita Hoffner; Law Librarian Linda Thompson; Chief Accounting Records Officer Pat Schmidt; Grievance Coordinator Tina Stepp; Prisoner Store Manager Brian Olds; Nurse Practitioner Raymond Ingraham; Food Service Director Kevin O'Brien; Nursing Supervisor Joy Parrish; Health Unit Managers Debbie Roth and the unknown party named as Jane Doe; and Custody Sergeant (unknown) Riddle.

In his two-paragraph complaint, Plaintiff sweepingly alleges that all Defendants conspired with Assistant Attorney General Peter Gavorchin to orchestrate a massive scheme to retaliate against Plaintiff for pursuing his pending civil rights action against a nurse from the Muskegon Correctional Facility (MCF) and an insurance company. *See Price v. VanDyke et al.*, No. 1:10-cv-374 (W.D. Mich.).[1] Plaintiff alleges that Defendants' collective conduct has exposed Plaintiff and his material witness to danger to his health and safety and has caused serious physical injuries.

In a lengthier "Statement of the Case" filed contemporaneously with his complaint (docket #5), Plaintiff's allegations remain largely conclusory. Plaintiff alleges that, on April 7, 2012, two days after his pending action was scheduled for trial on the remaining claims, attorney Gavorchin "was able to secure the assistance of the Defendants in a scheme of retaliation in hope of causing the Plaintiff – AND ONE OF HIS MATERIAL WITNESSES – enough injury and suffering that he would drop this litigation." (*Id.* at 3.) Plaintiff states that he provided Defendant

---

[1] Seven other defendants in the cited action have been dismissed from the action.

Hoffner with "clear LEGAL NOTICE" about unspecified retaliation, which all Defendants purportedly ignored. (*Id.*) Plaintiff filed a series of grievances that Defendant Stepp allegedly interfered with or ignored. Plaintiff allegedly filed a "NOTICE OF INTENT" in the Michigan Court of Claims. (*Id.*) Defendants Thompson, Schmidt and Olds "ensured that the Plaintiff lost ALL of his indigent hygiene, legal material, and supplies; – and further enabled his own personal typewriter so that he could not access the Courts and Draft his filings without extremely severe difficulty, if at all." (*Id.* at 4.) Plaintiff contends that Defendants O'Brien and Riddle were persuaded to participate in unspecified retaliation because they were aware of and interested in Plaintiff's complaints in other litigation about the legality of the Kosher meal program. In addition, Ingraham, Parrish, Roth and Jane Doe all were aware of Plaintiff's ongoing medical needs, including his bladder condition and his severe allergy to broad beans and palm oil, as well as his complaints about his medical treatment in Case No. 1:10-cv-374. Despite this awareness, the Defendants in some unspecified fashion allowed Petitioner's Epi-Pen to be taken away by an unspecified person, leading to an exposure and subsequent severe allergic reaction to one of the allergens. Plaintiff also complains that unnamed Defendants retaliated against Plaintiff by injuring his "material witness" and "co-counsel" Lawrence Sparks, when they improperly treated Sparks' medical needs. (*Id.* at 5-6.) Plaintiff contends that attorney Gavorchin admitted his responsibility for the alleged conspiracy by filing in Plaintiff's pending action a motion to quash Plaintiff's subpoenas against a variety of LCF employees whom Plaintiff alleged were engaged in the massive conspiracy to retaliate. (*See id.* at 8 (referencing docket #295 in *Price*, No. 1:10-cv-374).)

In sum, Plaintiff contends that Defendants conspired to retaliate against him in violation of the First Amendment and violated the Eighth Amendment by failing to take action to

ensure that LCF employees did not cause Plaintiff harm when they should have been aware that his litigation placed him at risk.

## Discussion

I.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Conspiracy

Plaintiff alleges that Defendants conspired to retaliate against him in violation of 42 U.S.C. §§ 1983 and 1985. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action.'" *See Hensley v. Gassman*, 693 F.3d 681 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *see also Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Similarly, to state a claim for conspiracy under § 1985, a plaintiff must allege facts showing that (1) two or more persons conspired (2) for the purpose of depriving the plaintiff of the equal protection of the laws and (3) that the conspirators committed an overt act (4) that injured the plaintiff. *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005); *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)). The § 1985 plaintiff also must demonstrate that the conspiracy was motivated by a class based animus, such as race. *Radvansky*, 395 F.3d at 314; *Johnson*, 40 F.3d at 839; *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996). Under both § 1983

and § 1985, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient to state a claim. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996).

Plaintiff fails to state claim of conspiracy under § 1985, because he makes no allegation of race-based animus. Moreover, Plaintiff's allegations fail to support a claim under either § 1983 or § 1985 because they are wholly conclusory and speculative. Even viewed in the light most favorable to Plaintiff, the allegations sweepingly and vaguely describe circumstances that occurred over a period of time and involved acts by unspecified LCF employees. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them. His reference to attorney Gavorchin's alleged admissions of conspiracy is entirely irrational. In *Price*, No. 1:10-cv-374, attorney Gavorchin made no admission concerning the existence of a conspiracy; he merely moved to quash certain subpoenas filed by Plaintiff because they were irrelevant to Plaintiff's claims in that case. *Id.* (docket #295). Moreover, Plaintiff's allegations do not describe clear individual actions by any particular Defendant. Instead, they hinge on a highly attenuated inference that the actions of unspecified LCF employees in 2012 were part of a conspiracy to retaliate against Plaintiff because he had received a trial date in a 2010 lawsuit about conduct by an MCF nurse that occurred in 2008 and 2009. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to

suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 129 S. Ct. at 1950. In light of the far more likely possibility that the various incidents were unrelated, Plaintiff fails to state a plausible claim of conspiracy.

### B.      Supervisory Liability

Plaintiff fails to make specific factual allegations against any Defendant, other than to claim that Defendants failed to adequately to address his grievances and/or failed to ensure that other unidentified employees did not violate Petitioner's rights. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that any of the Defendants engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

C.      **Retaliation**

Even assuming that Plaintiff had made specific allegations against one or more of the Defendants, he fails to state a retaliation claim. Plaintiff alleges that Defendants retaliated against him in 2012 for filing and maintaining a lawsuit against a prison official who worked at the Muskegon Correctional Facility in 2008 to 2009. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez*, 826 F.2d at 1538-39 (6th Cir. 1987)); *see also Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal

- 8 -

proximity are not sufficient to show a retaliatory motive); *Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. Mar. 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994).

Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion that Defendants retaliated against him because he filed and prosecuted a lawsuit against a nurse at another facility. Plaintiff suggests that unidentified officials were motivated to change his health accommodations and to refuse to treat his "co-counsel" simply because a trial date was set in that case on April 7, 2012. Under some circumstances, temporal proximity may be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Here, the allegation of temporal proximity is extremely weak. Plaintiff resided at LCF and experienced no problems for over two years after he filed his lawsuit. Plaintiff alleges no fact connecting the MCF nurse and any of the Defendants named in this action. Under these circumstances, no basis exists for concluding that the setting of a trial date in a 2010 action was causally connected to any action taken at LCF. Accordingly, Plaintiff's speculative allegations fail to state a claim.

### D. Eighth Amendment

Similarly, Plaintiff fails to state an Eighth Amendment claim. According to the complaint, Plaintiff is severely allergic to broad beans, mesquite and palmatate (palm oil), and

exposure may cause him to experience anaphylaxis. Plaintiff also has Reiter's Syndrome, which causes severe bladder problems leading to incontinence. Plaintiff's incontinence creates an odor problem that has caused him to be assaulted by other prisoners. His action in *Price v. VanDyke et al.*, No. 1:10-cv-374, is based on the defendants' failure to adequately treat his serious health conditions and their related failure to protect him from assault. As the result of the seriousness of his health problems, in an order issued on June 4, 2010, the district judge in *Price* directed the MDOC to keep Plaintiff at LCF during the pendency of the action. *See id.* (docket #30, Page ID#148). Plaintiff remained housed at LCF since that time without experiencing problems until April 7, 2012. During that time, Plaintiff's allergy problem was accommodated by provision of a diet free from the allergenic products and access to an Epi-pen for emergency treatment of any exposure symptoms. Plaintiff complains that an unidentified person took away his accommodations and that another unidentified person is responsible for his exposure to these products on July 24, 2012 and October 9, 2012, which resulted in his emergency hospitalization.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the

plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cnty*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland Cnty*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

In the instant case, Plaintiff does not allege that he was completely denied medical care. Moreover, even accepting that Plaintiff has an objectively serious physical condition that was inadequately treated, Plaintiff makes no allegations that would support a conclusion than any named Defendant deprived him of necessary care, much less that the Defendant acted with the requisite subjective state of mind. The complaint therefore fails to allege that one or more of the Defendants

was deliberately indifferent to Plaintiff's serious medical needs. As a consequence, Plaintiff fails to state an Eighth Amendment claim.[2]

### E. Access to the Courts

Although Plaintiff does not expressly allege that he was denied his right of access to the courts, his allegations about the denial of indigent status arguably implicate that right. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's accessibility to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal

---

[2]To the extent that Plaintiff seeks to claim that Defendants deprived Lawrence Sparks of his Eighth Amendment rights, he lacks standing. *See Newsom v. Norris*, 888 F.2d 371, 381 (6th Cir. 1989); *Raines v. Goedde*, No. 92-3120, 1992 WL 188120, at *2 (6th Cir. Aug. 6, 1992). As a layman, Plaintiff may only represent himself with respect to his individual claims, and may not act on behalf of other prisoners. *Id.*; *see also O'Malley v. Brierley*, 477 F.2d 785 (3d Cir. 1973); *Lutz v. LaVelle*, 809 F.Supp. 323, 325 (M.D. Pa. 1991); *Snead v. Kirkland*, 462 F.Supp. 914, 918 (E.D. Pa. 1978).

materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-353; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

Because Plaintiff alleges that the denial of his request for indigent status interfered with his pending civil rights case, the Court will assume that Plaintiff's underlying claim is non-frivolous. Nevertheless, Plaintiff fails to state when and how his non-indigent status caused injury to his pending case. Further, the record of that proceeding indicates that Plaintiff has filed dozens of pleadings, resulting in over 300 docket entries to date, and he submitted more than twenty filings since the alleged interference occurred. *See Price*, No. 1:10-cv-374. As a consequence, Plaintiff fails to state an access-to-the-courts claim.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:     December 17, 2012                    /s/ Robert J. Jonker
                                                ROBERT J. JONKER
                                                UNITED STATES DISTRICT JUDGE